## JACK McKENNA *v.* THE STATE.

1. CRIMINAL LAW. *Self-defense. Instruction.*
   It is error to instruct the jury that they could not acquit a prisoner on the plea of self-defense unless they believed or had reason to doubt whether the deceased was at the time seeking to *murder* the prisoner or that he had reason so to believe.

2. SAME. *Great bodily harm.*
   It is not incumbent on the prisoner to do more than to raise a doubt in the mind of the jury as to whether he had a right to believe that the deceased was at the time seeking to do him some *great bodily harm* and that the only way to avoid this was to take the life of deceased.

APPEAL from the Circuit Court of Warren County.

HON. WARREN COWAN, Judge.

On the 16th day of January, 1884, the appellant shot and killed one Ed. Wilson, keeper of a faro bank, in his gaming-house in the city of Vicksburg. On the 18th of January he was indicted for murder, on the 19th arraigned, on the 24th his case was put on trial, on the 26th the jury rendered a verdict of guilty as charged and he was sentenced to be hung. He appeals to this court and assigns several grounds for error, one of which is that the court erred in granting the sixth instruction for the State, which is as follows : " That in order that the prisoner is justified by the plea of self-defense it is necessary that the evidence as a whole should

reasonably leave the minds of the jury in doubt as to whether or not the prisoner had at the time of the killing reasonable grounds to believe that the deceased had the deliberate design to take the life of the prisoner, not in his own necessary self-defense, and that there was then and there imminent peril of such design being immediately carried into effect." The other facts in the case sufficiently appear in the opinion of the court.

*J. M. Gibson,* for the appellant.

The sixth, seventh, and tenth instructions of the State we insist are erroneous, since they announce this as law, to wit : " That while the jury might be of the opinion the homicide was committed by the defendant honestly believing himself in imminent and impending danger to life or limb at the hands of the deceased, yet unless the *jury now* believe that he then stood in actual and impending danger they must *convict* him, *and convict* him of *murder*." We contend this is the only rational inference or deduction to be drawn from these instructions. Here they, the jury, are excluded from all idea of a homicide if it is not excusable or justifiable ; that then it follows it is murder and nothing else, that it may not or cannot be manslaughter. Then again in them we find the jury are required to regard only their own opinion of what they believed was the intention of the deceased toward the defendant, and not to regard what the conduct, manner, and actions of the deceased warranted the defendant in believing when he shot and killed the deceased, the whole principle of apparent danger being entirely ignored, and the jury restricted from deducing from the facts any conclusion freely drawn as to what was the intention or honest belief prompting the accused at the time. The intention accompanying every act of a man, whether a good one or not, goes to make or not to make that act criminal. The intention accompanying every killing, whether born of malice aforethought or of a sudden heat of passion or of self-defense, goes to make the homicide either murder or manslaughter, or excusable. And where a man acts under a mistake of the circumstances surrounding him with honest purpose, no matter what be the result of that act, he is guilty of no legal or moral offense. "*Actus non reum facit sed mens.*" Hence, when

the court undertakes, as it does in these three instructions, to specify what alone shall amount to an excuse or justification on a plea of self-defense, and restricts the jury from all the theory and principle of apparent danger, or from the right of the accused to act upon a rational inference drawn from what the surroundings and appearances then indicated, those instructions must be condemned as not sound in principle or practice, and as an invasion of one of the natural rights pertaining to human safety, as overthrowing the old maxim of law that the intention is always the gist of every crime. Wharton on Homicide, § 527–8 ; *Jeff* v. *State*, 37 Miss. 321 ; *Morgan* v. *State*, 18 S. & M. 242; *Long* v. *State*, 52 Miss. 23 ; Bishop on Crim. Law, 5th Ed., Vol. I, §§ 303, 305. Besides the objections pointed out in the foregoing relating to the sixth instruction of the State, there is another fatal error in it, and that is it excludes from the consideration of the jury all idea of the danger of great bodily harm being an excuse or justification for a killing, and restricts and confines the jury to the one issue of fact of whether the defendant stood in danger to his life at the hands of the deceased, when the well-settled rule of law is that a man may defend his person from great personal injury even at the expense of taking life.

*J. M. Gibson* also argued the case orally.

*R. V. Booth*, on the same side, filed an elaborate brief, and argued the case orally, insisting that not only were the instructions given for the State, especially the sixth, clearly erroneous, but that upon the facts the verdict was manifestly wrong.

*T. C. Cutchings*, Attorney General, for the State, argued the case orally.


CHALMERS, J., delivered the opinion of the court.

By the sixth instruction for the State the jury were told in effect that they could not acquit the prisoner on the plea of self-defense unless they believed or had reason to doubt whether the deceased was at the time seeking to murder the prisoner, or that he had reason so to believe. This was clearly erroneous. It was not incumbent on the prisoner to do anything more than to raise a doubt

in the mind of the jury as to whether he had a right to believe that the deceased was at the time seeking to do him some great bodily harm, and that the only way of avoiding this was to take the life of the deceased. If he honestly and reasonably so believed, he had the right to slay in order to save himself from impending serious harm to life or limb. The instruction denied him this, and was therefore erroneous.

It is possible that a close scrutiny of all the other instructions in the case might demonstrate that the error in this was cured by some others that were given, but we cannot resist the conclusion that the facts themselves dictated a different conclusion than that reached by the jury. The deceased was the dealer and accused was the player at a game of faro. A difficulty with high words ensued between them touching some incident of the game, in which charges of foul dealing were hurled back and forth. The deceased advanced in a threatening manner on the accused, who unbuttoned his vest and thereby displayed a weapon, at the same time pushing or shoving the deceased back. The deceased said, " You are armed, are you?" The accused replied, " By God, I am armed, and you had better prepare yourself and we will shoot it out right here." The deceased turned at once to his negro porter and said, " Where in the hell is my pistol? Go and get it." The porter went immediately to bring the pistol. While he was gone a bystander interposed to prevent a difficulty, and giving what he thought was a true version, suggested that it was too small a thing to fight about, whereupon the accused said, " I give it up; I was wrong; I will let it drop." Accused, as he said this, walked to the fire-place and there took his stand behind a spectator who was there standing. To this recantation or acknowledgment of wrong the deceased made no reply. Meanwhile, the negro returning with the pistol, handed it to the deceased, who met him, and demanding it again, received it at the door. As soon as he received it, without saying a word, he advanced with raised pistol and outstretched arm, according to one of the witnesses, toward the fire-place. When he got near to the bystander in the rear of whom accused was standing, the latter reached around the stranger and fired upon and killed the deceased.

The only conflict of evidence is as to whether the deceased advanced toward the fire-place, or merely turned around and faced toward it with raised pistol when he received the pistol from the negro. Only one witness swears that he did not advance toward the fire-place, and that witness admits that he turned around toward it. We cannot think this difference material, though the others testify that he advanced. It is nowhere shown that the accused drew or was preparing his weapon while the deceased was getting his, or advancing upon him, as the fact may be. Upon this testimony the accused was found guilty and sentenced to be hanged. We cannot think that the facts warranted the verdict, and it is to be observed that we have alluded in this opinion solely to the witnesses for the State. Save the sixth instruction for the State, alluded to above, we find no objection to the charges given.

*Reversed.*